

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-24-2008

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1639

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Chen v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1333.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1333

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1639

———

WEI MING CHEN,

Petitioner

v.

Attorney General of the United States,

Respondent

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A 73 768 106)
Immigration Judge: Henry S. Dogin

———

Submitted Under Third Circuit LAR 34.1(a)
April 15, 2008

Before: AMBRO, FISHER, Circuit Judges, and MICHEL,* Chief Circuit Judge

(Filed: April 24, 2008)

———

OPINION OF THE COURT

———

———

* The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals
for the Federal Circuit, sitting by designation.

MICHEL, <u>Chief</u> <u>Circuit</u> <u>Judge</u>.

Wei Ming Chen petitions for review of an order for removal. The immigration judge ("IJ") rejected Chen's claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT")[1] based principally on his finding that Chen's testimony and other evidence were not credible. The Board of Immigration Appeals ("BIA") sustained the removal on the same basis. Because the IJ's adverse credibility determination and other factual findings are supported by substantial evidence, we will deny the petition.

I.

Because we write solely for the parties, we recite only those facts relevant to our analysis. Chen is a native and national of the People's Republic of China. He first attempted to enter the United States on May 23, 1995, using a fraudulent Japanese passport and false name. The Immigration and Naturalization Service ("INS")[2] detained Chen and took an airport statement in his native Chinese. In the statement, Chen claimed to have fled China due to persecution for being Catholic. A deportation order was entered on July 12, 1995. Chen applied for asylum but later withdrew his application and accepted deportation.

---

[1] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85.

[2] As of March 2003, INS became United States Citizenship and Immigration Services ("CIS"), an agency within the Department of Homeland Security.

On January 13, 2004, Chen again attempted to enter the United States illegally, this time at or near Hidalgo, Texas. CIS encountered him on February 16, 2004, at William P. Hobby Airport in Houston, where Chen presented a fraudulent Korean passport and gave a false name. He denied having ever entered the United States before. He was again detained and deportation proceedings were begun. With the assistance of an attorney, Chen filed an application for asylum on July 14, 2004, claiming that his wife's pregnancy had been forcibly aborted in 1993 and that the Chinese government had discovered that he is a practitioner of Falun Gong.

After several proceedings to clarify Chen's actual identity and obtain the correct interpreter, the IJ ultimately held a hearing on February 2, 2006, where Chen testified in more detail about the alleged forced abortion and his involvement with Falun Gong. He testified that although the abortion occurred in 1993, he did not marry his now wife until September 1997 and that she at times lived with her parents prior to their marriage. He further admitted that he had in fact illegally entered the United States before and had been detained, contrary to his prior statements. Immediately following the hearing, the IJ rendered his decision denying asylum. The IJ stated that he did not find Chen to be credible in general and that his testimony was specifically not credible as to either the alleged forced abortion or the alleged future prosecution for practicing Falun Gong. He did, however, find that Chen demonstrated substantial knowledge of the practices of Falun Gong.

3

Chen appealed to the BIA. While the appeal was pending, it was confirmed that Chen had previously been subject to a deportation order in 1995. CIS terminated the file from his 2004 entry and elected to reinstate the July 11, 1995 deportation order, so informing Chen on June 30, 2006. Chen then requested protection from removal due to fear of persecution and torture. A CIS official took sworn testimony from Chen on July 14, 2006, in a credible fear interview with his attorney present. Chen testified then for the first time that he was beaten with a baton and assaulted by Chinese police officers in conjunction with the forced abortion of his then girlfriend. He claimed that his original 1995 entry had been to escape this persecution and torture as well as the forced abortion. He further testified that his wife and his daughter (born after their legal marriage in 1997) were harassed due to his implication in Falun Gong activities. Although finding his claims regarding the forcible abortion and associated beatings not credible, the CIS official found that Chen's testimony regarding his Falun Gong involvement warranted referral to an IJ.

The IJ held a hearing on October 5, 2006.[3] In addition to testifying to the forced abortion of his girlfriend, his beating at the hands of the police for protesting the abortion, and his fear of persecution for practicing Falun Gong, Chen for the first time testified that he was also fined and ultimately beaten and tortured by Chinese authorities in 1996 due to

_____

[3] The IJ who held the October 5, 2006 hearing and rendered the decision affirmed by the BIA and appealed here was the same IJ who rendered the February 2, 2006 decision.

4

his unauthorized attempted emigration from China to the United States. He testified that in addition to being fined twice, he was imprisoned, beaten severely (including with a hammer), and tortured with electric shock sticks.

The IJ also had before him two letters from Chen's wife. The first, dated September 3, 2006, relates details of the forced abortion in 1993 and states that Chen was hit on the head by the birth control authorities. It also states that Chen practiced Falun Gong and that she and her daughter had been harassed and threatened. Regarding his treatment upon repatriation from the United States in 1996, the letter merely states that Chen was fined and detained and does not mention any beatings or torture. In the second letter written later, however, Chen's wife describes the beatings and torture as well.

The IJ denied relief under both the Immigration and Nationality Act ("INA") and the CAT, finding that Chen was not credible due to inconsistencies in his testimony and the record evidence. He also found that Chen's testimony was not adequately corroborated to remedy the inconsistencies and that Chen had demonstrated a propensity to lie and withhold the truth.

Chen appealed to the BIA. The BIA affirmed the IJ's adverse credibility determination and discerned no clear error in his findings. Thus, the BIA affirmed the IJ's denial of asylum, withholding of removal, and protection under the CAT. Chen then timely filed the present petition for review. We have jurisdiction under Section 242(a)(1) of the INA, 8 U.S.C. § 1252(a)(1).

## II.

When, as here, the BIA has adopted the reasoning of the IJ in its decision, we review the decision of the IJ. Kibinda v. Att'y Gen. of the United States, 477 F.3d 113, 118-19 (3d Cir. 2007). The BIA and IJ decisions were based on the IJ's adverse credibility determination against Chen, finding that his testimony was not credible. In reviewing an adverse credibility determination, we look for substantial evidence supporting the determination. Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004). The IJ is entitled to consider any and all inconsistencies and omissions in the evidence and testimony given by an applicant. See 8 U.S.C. § 1158(b)(1)(B)(iii); Xie, 359 F.3d at 243.

Here, the inconsistencies in Chen's various statements and testimony were legion. He has given a myriad of different explanations for his illegal entries into the United States, continuing to report new and increasingly serious allegations at each stage of his protracted immigration proceedings. At the time of his first entry, Chen presented a fraudulent passport and lied about his identity. He then admitted his true identity and claimed only that he was persecuted for being Catholic.[4] He gave no mention of his girlfriend's forced abortion nor any scuffle with Chinese authorities.

---

[4] Chen argues that the IJ erroneously relied on his 1995 statement given that it was an airport statement taken, he alleges, while he was under the control of a "smuggler." We reject that this constitutes reversible error because the IJ relied on numerous other inconsistencies that constitute substantial evidence supporting his adverse credibility determination. We also note that here, the airport statement was taken in Chen's native language with the assistance of an interpreter.

Nearly a decade later, Chen again attempted to enter the United States illegally, again presenting a fraudulent passport and lying about his identity. He also lied about his previous detainment and deportation. He later admitted his identity and that he had previously been deported, but he gave a different explanation for his earlier illegal entry, alleging for the first time that his girlfriend's pregnancy in 1993 had been forcibly aborted. He also claimed his Falun Gong activities made him a target for persecution. But he mentioned no beatings or altercations with Chinese authorities in 1993 or in 1996 when he returned to China after being deported from the United States.

Only after asylum was denied in February 2006 did Chen claim that he had been beaten by Chinese authorities when he protested his girlfriend's abortion in 1993, i.e., even before his initial illegal entry. But even then he made no mention of any beating or detainment in 1996 for unauthorized emigration. Only after the CIS official indicated that the forced abortion and beating story was not credible did Chen claim that he had been beaten, detained, and tortured with electric shock sticks upon his return to China in 1996 after deportation. We hold that these numerous inconsistencies establish that the IJ's adverse credibility determination was supported by substantial evidence.[5]

---

[5] The government concedes that the IJ erroneously stated that Chen claimed to be a United States citizen when questioned by CIS in February 2004. We hold, however, that this error was harmless in light of the numerous other inconsistencies cited and relied on by the IJ.

III.

Chen argues on appeal that the IJ, despite his adverse credibility determination, found that (1) his girlfriend was forced to have an abortion in 1993, (2) Chen was detained and fined in 1996 for leaving the country without authorization, and (3) Chen is a Falun Gong practitioner. He contends that the IJ's judgment should have been reversed because these findings alone establish entitlement to withholding of removal and relief under the CAT.[6] We disagree. We review factual findings and inferences for substantial evidence. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

1.

As to the alleged forced abortion in 1993, the IJ clearly found that no marital relationship, de facto or otherwise, existed between Chen and Ms. Dong in 1993. This finding is supported by substantial evidence; Chen testified that they did not marry until 1997 and that, although they cohabited, Ms. Dong also lived with her parents some of the time prior to their marriage. As Chen concedes, case law provides that he cannot claim protection solely due to forced sterilization or abortion of a girlfriend to whom he is not married. Lin v. U.S. Dep't of Justice, 494 F.3d 296, 304-14 (2d Cir. 2007) (en banc);

---

[6] To be eligible for withholding of removal under Section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), the applicant must demonstrate that his "life or freedom would be threatened in [the country of removal] because of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To qualify for relief under the CAT, the applicant must demonstrate that it is more likely than not that he would be tortured if removed. 8 C.F.R. § 208.16(c)(2).

Matter of S-L-L-, 24 I&N Dec. 1, 28 (B.I.A. 2006). Although Chen argues other testimony supports a finding of marriage in 1993, such testimony does not change the fact that substantial evidence supports the IJ's contrary finding.[7] Chen also argues, without supporting authority, that the close relationship between Chen and Ms. Dong and the fact that they eventually did marry are sufficient. We hold that this is contrary to the case law, and we certainly cannot broaden the rule to encompass the case at bar where no marital relationship, official or unofficial, was found.

2.

The IJ did find that the Chinese government detained and fined Chen after his return to China in 1996, though he found that Chen's testimony that he was beaten and tortured as well was not credible. Chen now argues that the large amount of the fines alone, which exceeds his annual income, constitutes persecution. He cites Li v. Att'y Gen. of the United States, in which we held that "deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution." 400 F.3d 157, 168 (3d Cir. 2005) (emphasis added). In Li, the applicant had not only been assessed an onerous fine but was also effectively blacklisted from all gainful employment. In contrast, there is no evidence that the fines imposed here, while

---

[7] Chen also argues that he can claim persecution based on Ms. Dong's abortion because the government held him responsible for resisting the abortion. But the IJ specifically found that his evidence of that alleged resistance and consequences thereof was not credible.

steep, endangered his family's ability to support itself. In fact, the evidence indicates that he and/or his family members paid the fines, and there is no evidence that they caused any severe or substantial hardship whatsoever. We thus see no error in the IJ's holding that these fines did not constitute persecution. On the contrary, it is supported by substantial evidence.

3.

Lastly, while the IJ did find that Chen has the knowledge to practice Falun Gong, he did not find credible Chen's assertions that he would be persecuted for practicing Falun Gong upon his return to China. The IJ stressed that Chen had not, in his view, ever been subjected to persecution for practicing Falun Gong while in China, and he repeatedly stated that he does not believe that Chen will be persecuted for Falun Gong practices in the future should he be returned to China. In addition, the same IJ indicated in his February 2, 2006 decision that he disbelieved Chen's story about how he had allegedly been implicated as a Falun Gong practitioner through a fellow adherent who was arrested.

While we appreciate that the State Department and courts in other Falun Gong cases have recognized that China has severely persecuted Falun Gong adherents both for past and current activities, we cannot say here that substantial evidence does not support the IJ's finding that Chen will not be persecuted for Falun Gong practices when he returns to China. Chen's familiarity with Falun Gong does support his argument, but his utter

10

lack of credibility in general and, as the IJ found, his lack of credibility as to his past and future Falun Gong activities in China are fatal.

Given that the IJ's adverse credibility determination and relevant factual findings are supported by substantial evidence, we will deny Chen's petition for review.